**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

THANH VAN HOANG (A-No. 027-583-487),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

Case No. 1:26-cv-07263-JLT-CDB

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; ORDERING PETITIONER'S IMMEDIATE RELEASE; AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

(Docs. 1, 2)

Before the Court is Thanh Van Hoang's petition for writ of habeas corpus brought under 28 U.S.C. § 2241, (Doc. 1), and his request for a temporary restraining order (Doc. 2). Petitioner is an immigration detainee in U.S. Immigration Customs and Enforcement custody at the Golden State Annex in McFarland, California. (*See* Doc. 1 at 3.) Having evaluated the habeas petition (Doc. 1), TRO request (Doc. 2), Respondent's opposition (Doc. 9), and Petitioner's reply (Doc. 11), the Court **GRANTS** the habeas petition[1], **DENIES** the TRO as moot, and **ORDERS** Petitioner's immediate release from custody.

///

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing on the motion, and whether the parties sought additional briefing on the merits of the habeas petition. (Doc. 5.) Neither party requests a hearing or further briefing. (*See* Doc. 9 at 1–2; Doc. 11 at 2.) Considering this and given that Respondents had notice and opportunity to respond, the Court decides this case on the underlying habeas petition on the present record.

## I. FACTUAL & PROCEDURAL BACKGROUND

Petitioner is from Vietnam. (Doc. 9-1 at 1.) After the fall of Saigon in 1975, Petitioner, his father, and his siblings fled Vietnam and temporarily lived in a refugee camp in Thailand and Hong Kong. (Doc. 1 at 4.) On September 26, 1979, Petitioner and his family resettled in the United States when Petitioner was five years old. (*Id.*; Doc. 9-1 at 3.) At that time, Petitioner was lawfully admitted into the United States as a refugee.[2] (Doc. 9-1 at 3.)

From around 1991 until 2003, Petitioner incurred a series of criminal arrests and charges. (*See* Doc. 9-4 at 6–15.) In relevant part, on August 11, 1992, Petitioner was arrested for burglary and theft under Cal. Pen. Code §§ 459 and 484, respectively. (Doc. 9-4 at 7.) On August 27, 1992, Petitioner was convicted of theft, and his burglary charge was dismissed in furtherance of justice. (*Id.*) On November 11, 1998, Petitioner was arrested for petty theft under Cal. Pen. Code § 488. (*Id.* at 8.) On November 16, 1998, Petitioner was convicted of petty theft with a prior conviction, but that conviction was later set aside in 2026 under Cal. Pen. Code § 1203.4. (*Id.* at 8–9.) On January 15, 1999, Petitioner was again arrested for burglary and petty theft with a prior conviction under Cal. Pen. Code §§ 459 and 666, respectively. (*Id.* at 9.) On April 6, 1999, Petitioner was convicted of theft in connection with this arrest and sentenced to 180 days in prison; that conviction was later set aside in 2026. (*Id.* at 9–10; *see also* Doc. 9-1 at 3.) On May 11, 2000, Petitioner was convicted of petty theft with a prior conviction under Cal. Pen. Code § 666. (Doc. 9-4 at 8.) On December 6, 2000, Petitioner was arrested for rape under Cal. Pen. Code § 261(a)(2) but was acquitted of this offense on June 29, 2001. (*Id.* at 11–12.) On May 11, 2003, Petitioner was arrested for engaging in unlawful sex with a minor under Cal. Pen. Code § 261.5(c) and on October 9, 2003, Petitioner was convicted of this offense and sentenced to 2 years in prison with probation. (*Id.* at 13–14; *see also* Doc. 9-1 at 3.)

On May 28, 1999, the Immigration and Nationality Services (INS) issued a Notice to Appear charging the Petitioner as removable under Section 237(a)(2)(A)(ii) of the Immigration

---

[2] Though Petitioner states that he "grew up as a lawful permanent resident," (Doc. 1 at 4), it is unclear if he ever received LPR status or merely obtained lawful refugee status. (*See* Doc. 9-1 at 3.) Petitioner fails to attach a copy of his former LPR card. In any event, this factual inconsistency is not dispositive to the resolution of this case.

and Nationality Act (INA), codified in 8 U.S.C. § 1227(a)(2)(A)(ii). (Doc. 9-1 at 3); 8 U.S.C. § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefore and regardless of whether the convictions were in a single trial, is deportable."). Around that time, immigration officials detained the Petitioner but then released him on May 28, 1999, after posting a $10,000 bond. (Doc. 9-1 at 3.) On July 10, 2001, INS subsequently cancelled Petitioner's bond.[3] (*Id.*) On September 26, 2001, an Immigration Judge (IJ) ordered Petitioner removed to Vietnam. (*Id.*; Doc. 9-2 at 1.) Petitioner did not appeal that decision.[4] (Doc. 1 at 4.) As such, Petitioner's order of removal is administratively final. 8 U.S.C. § 1231(a)(1)(B)(i).

After Petitioner's release from prison on or around August 4, 2005, ICE arrested the Petitioner pursuant to his order of removal. (Doc. 1 at 4; *see* Doc. 9-4 at 15.) That same day, ICE released the Petitioner on an Order of Release on Supervision (OSUP).[5] (Doc. 1 at 4.) According to Petitioner, he was released at that time because "Vietnam was still not accepting people for deportation." (Doc. 2-1 at 2.) Petitioner claims that for the following 21 years while released on OSUP, he did not commit any more crimes and attended all his required check-in appointments. (Doc. 1 at 5.) Respondents do not dispute this, nor does the record indicate otherwise. (*See* Doc. 9; Doc. 9-1 at 3; Doc. 9-3 at 1; Doc. 9-4.) Petitioner further claims that for the past years while on release, he has built family and community ties in California. (Doc. 1 at 6.) In 2008, Petitioner married his current U.S. citizen wife and together they run a nail salon in Sacramento, California. (*Id.*; Doc. 2-2 at 2.)

---

[3] It is unclear whether the I-213's reference to Petitioner's bond being "cancelled" means that his release on bond was revoked or that he no longer had to post the $10,000 bond while on release. (*See* Doc. 9-1 at 3.) It does not appear that Petitioner was arrested at the time his bond was cancelled in July 2001. (*See id.*)

[4] Upon entering Petitioner's A-Number into EOIR's website, the Automated Case Information confirms that Petitioner was ordered removed by an IJ on September 26, 2001, and that no appeal was received for this case. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited September 23, 2026).

[5] Although the notice of revocation of release indicates that Petitioner's OSUP was issued around July 8, 2025, (Doc. 9-3 at 1), the RAP sheet and Petitioner confirm that his OSUP was issued soon after his release from prison in 2005. (*See* Doc. 1 at 4; Doc. 2-1 at 2; Doc. 9-4 at 15.)

On August 25, 2026, ICE arrested the Petitioner near his home while driving to work and transferred him to the Golden State Annex Detention Facility, where he remains. (Doc. 1 at 5–6; Doc. 9-1 at 2.) That day, DHS issued a notice revoking Petitioner's OSUP "pursuant to 8 C.F.R. § 241.4(l)" because the "purposes of release have been served" and "ICE has the ability and means to effectuate [his] removal" and "is seeking a travel document" to Vietnam. (Doc. 9-3 at 1.) Though Petitioner indicates that officers did not conduct an informal interview with him, (*see* Doc. 1 at 6), the notice of revocation indicates that an informal interview was scheduled for August 25, 2026, the same day of Petitioner's arrest. (Doc. 9-3 at 2.) That day, Petitioner received an informal interview, but made no oral or written statements, did not provide any documents, and refused to sign the interview summary form. (*Id*. at 3.)

On September 9, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for TRO, arguing that his Fifth Amendment due process rights have been violated and requesting immediate release from ICE custody. (Docs. 1, 2.) Petitioner argues that Respondents violated his due process when they re-detained him without first showing a change in circumstances that removal to Vietnam is now significantly likely to occur, and without meaningful notice or an opportunity to be heard, after twenty-one years of release on supervision. (Doc. 1 at 7–11; Doc. 2 at 5–9.) On September 16, 2026, Respondents filed an opposition, arguing that, under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), Petitioner is subject to mandatory detention while the government executes his final order of removal and his detention is presumptively reasonable because it has not exceeded the six-month removal period under 8 U.S.C. §§ 1231(a)(2) and 1231(a)(6). (Doc. 9 at 1–2.) On September 17, 2026, Petitioner filed a reply. (Doc. 11.)

## II. JURISDICTION

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 10–11.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue, and instead the central issue is Petitioner's continued detention. Thus, this Court has the authority to review the government's termination of Petitioner's prior release. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## III. ANALYSIS

### A. Detention Under 8 U.S.C. §1231(a)(2) and Why *Zadvydas* Is Inapplicable.

Under 8 U.S.C. § 1231(a)(2), a noncitizen with a final order of removal is subject to mandatory detention. 8 U.S.C. § 1231(a)(2) ("*During the removal period*, the Attorney General *shall detain* the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.") (emphasis added). Further, under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section . . . 1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision." 8 U.S.C. § 1231(a)(6) (emphasis added).

Respondents argue that Petitioner's detention is presumptively reasonable under 8 U.S.C. § 1231(a)(2) because Mr. Hoang has been detained for less than six months and he is subject to mandatory detention while the government executes his final order of removal. (*See* Doc. 9 at 2.) Respondents rely on *Zadvydas v. Davis*, where the Supreme Court held that under these provisions the government may detain a removable noncitizen beyond the 90-day statutory

removal period, but only for so long as "*reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682; *see also* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"). The Court explained that the statute contains an implicit reasonable time limitation, which is presumptively six months, after which the noncitizen bears the burden of proving that there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 682, 701.

However, *Zadvydas* is not applicable to Petitioner's circumstances. *Zadvydas* dealt with the prolonged detention of two criminal noncitizens—who had been taken into INS custody following their release from prison and upon the issuance of a final order of removal—but who were *continuously held* in INS custody beyond the statutory 90-day removal period, not *released* on an order of supervision as Petitioner was here. *Zadvydas*, 533 U.S. at 684–686; (Doc. 1 at 3–4, 16.) As the court in *Nguyen* best explained:

> This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. June 20, 2025).

On numerous occasions, this Court and many others, have adopted the reasoning set forth in *Nguyen*. *See Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3–4 (E.D. Tex. Aug. 2, 2025); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025); *Phan v. Beccerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025); *Yan-Ling X. v. Lyons*, No. 1:25-cv-01412-KES-CDB, 2025 WL 3123793, at *3–5 (E.D. Cal. Nov. 7, 2025); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *4–5 (E.D. Cal. Nov. 14, 2025); *Huang v. Albarran*, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. Feb. 3, 2026). These cases explain that instead of *Zadvydas*, the regulation at 8 C.F.R. § 241.13(i)(2) apply to noncitizens in Petitioner's situation and outline the procedures to be followed. As *Escalante* explained:

> Section 241.13(i)(2) entitled "Revocation for removal" provides that

> "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4) entitled "*Service determination under 8 C.F.R. 241.13*" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change in circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to [the country to which the alien was ordered removed or] a third country, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).
>
> These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed. Other cases have indicated the same upon revocation of release. *See Nguyen v. Hyde*, [788 F. Supp. 3d 144, 149–150] (D. Mass. June 20, 2025) (finding *Zadvydas* 6-month presumption not applicable where alien is "re-detained" after having been on supervised release and that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably foreseeable); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D. N.J. June 13, 2025) (finding 6-month presumption had long lapsed while petitioner was on supervised release and it is respondent's burden to show removal is now likely in the reasonably foreseeable future). Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications.

*Escalante*, 2025 WL 2206113, at *3–4.

Likewise, 8 C.F.R. § 241.13(i)(2) applies to this case. On September 26, 2001, Petitioner was ordered removed and after his release from prison in 2005, immediately went into ICE custody. (*See* Doc. 1 at 4; Doc. 9-2 at 1.) ICE then released the Petitioner on OSUP in August 2005 because ICE was unable to deport him to Vietnam. (*See* Doc. 1 at 4; Doc. 2-1 at 2; Doc. 9-4 at 15.) After twenty-one years of release, ICE re-detained the Petitioner to remove him. (*See* Doc. 9-3 at 1.) Respondents also fail to dispute Petitioner's assertion that for the past twenty-one years he has complied with OSUP and has not committed new crimes.[6] (Doc. 1 at 5; *see* Doc. 9.) These facts show that § 241.13(i)(2) applies here; therefore, Respondents bear the burden of showing Petitioner's removal is significantly likely to occur in the reasonably foreseeable future.

---

[6] On the government's notice of revocation of release, the box regarding violations of release is *not checked* as a basis for revoking OSUP. (Doc. 9-3 at 1.) Thus, the Court finds that 8 C.F.R. § 241.13(i)(1), which provides that any "alien . . . released under an order of supervision . . . who violates any of the conditions of release may be returned to custody" and held "for an additional six months . . . to effect the alien's removal" is not at issue.

**B. Respondents' Failure to Show Significant Likelihood of Removal Under 8 C.F.R. § 241.13(i)(2) Violates Due Process.**

The plain language of § 241.13(i)(2) does not allow a court in the first instance to make the required individualized finding. *Hoac*, 2025 WL 199377, at *3; *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, the court should review ICE's determination using the factors set forth in 8 C.F.R. § 241.13(f), which are meant to instruct ICE. *Hoac*, 2025 WL 199377, at *3. Section 241.13(f) states:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f). Respondents cannot demonstrate changed circumstances showing a significant likelihood that Petitioner will be removed to Vietnam. (*See* Doc. 9.) In their opposition, Respondents provide no details regarding steps taken to obtain travel documents. (*See id*. at 1–2.) The notice of revocation of release only indicates that "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (Doc. 9-3 at 1.) This is insufficient to show a significant likelihood of removal.

First, assessing ICE's "ongoing . . . efforts to remove [the] alien," this Court cannot conclude that Petitioner's removal is reasonably foreseeable. 8 C.F.R. § 241.13(f). Though Respondents claim that "ICE is seeking a travel document" to Vietnam, (Doc. 9-3 at 1), Respondents provide no evidence to show what steps they have taken to remove the Petitioner, such as contacting the Vietnamese Embassy/Consulate to initiate the process. Further, there is no indication in the record that a passport or travel document has been issued in this case. (*See* Doc. 2-1 at 3; Doc. 9.) This Court has previously held that the mere "intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance." *Hoac*, 2025 WL 1993771, at * 4; *Phan*, 2025 WL 1993735, at *5. Indeed, Petitioner indicates that ICE did not

start the process of obtaining a travel document until a week *after* his arrest. (*See* Doc. 2-1 at 3.) Petitioner further indicates that he only recently completed his travel document application on September 8, 2026. (*Id.*)

The lack of travel documents or any evidence regarding steps taken to secure travel documents shows that removal is not reasonably foreseeable. *Cf. Nguyen v. Noem*, 797 F. Supp. 3d 651, 657, 672 (N.D. Tex. Aug. 10, 2025) (finding changed circumstances where the government *had obtained travel documents* and had scheduled petitioner's removal to Vietnam, rendering his removal imminent) (emphasis added); *Vu v. Warden, et al.*, No. 1:25-cv-01631-WBS-JDP, 2026 WL 202948, at *1 (E.D. Cal. Jan. 26, 2026) ("ICE *obtained a travel document* from the government of Vietnam on January 5, 2026, and has now scheduled petitioner's removal to Vietnam.") (emphasis added); *Vo v. Board of Immigration Appeals*, et al., No. 26-cv-01801-BLF, 2026 WL 637033, at *2 (N.D. Cal. Mar. 6, 2026) ("ICE *has procured valid travel documents* for Vo issued by Vietnam, and ICE intends to remove Vo to Vietnam on March 15, 2026.") (emphasis added); *cf. Huynh v. Noem, et al.*, No. 4:26-cv-00017-O, 2026 WL 694481, at *3 (N.D. Tex. Mar. 12, 2026) ("The Government has shown that Petitioner has filled out paperwork to apply for travel documents to Vietnam and that *request has been sent to the Vietnamese consulate*.") (emphasis added).

Second, assessing "the history of the Service's efforts to remove [the] alien[] to the country in question," Respondents fail to meet their burden. 8 C.F.R. § 241.13(f). Sometime in 2005, ICE released the Petitioner from custody because it was unable to secure Petitioner's removal to Vietnam. (*See* Doc. 2-1 at 2; Doc. 9-4 at 15.) Yet, Respondents fail to "provide[] [] details about why that documentation could not be obtained in the past" and fail "to show why obtaining that particular documentation is more likely [to occur] this time around," which weighs in Petitioner's favor. *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025). Considering the evidence, Respondents fail to show a significant likelihood of Petitioner's removal to Vietnam. While the government has significant discretion to enforce immigration laws, it must do so consistent with the requirements of its own regulations and the Due Process Clause. *See Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7

(E.D. Cal. Sept. 5, 2025) (citations and quotations omitted).

**C. Respondent's Failure to Provide a Pre-Deprivation Hearing Violates Due Process.**

Petitioner further argues that his re-detention without a pre-deprivation hearing violated due process. (Doc. 2 at 7–8.) Courts have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later without changed circumstances, the non-citizen is entitled to a pre-deprivation hearing. *J.L.R.P.*, 2025 WL 3190589, at *8–10 (explaining that petitioner had an accrued liberty interest after being out of ICE custody for nearly four years and that there was no changed circumstance to justify his re-detention without a pre-deprivation hearing); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025). Likewise, for twenty-one years, Petitioner lived at liberty in the United States. (Doc. 1 at 5–6.) He regularly checked in every three months, every six months, and eventually every year as required by ICE, and has committed no new crimes since his release in 2005. (*Id*. at 5.) Respondents do not dispute this. (*See* Doc. 9; Doc. 9-4 at 15–16.) As such, in the event of re-detention, Petitioner is entitled to a pre-deprivation hearing where the government bears the burden of showing that Petitioner poses a flight risk or danger to the community. *J.L.R.P.*, 2025 WL 3190589, at *9–10; *Alva*, 2025 WL 2419262, at *3–5.

Moreover, as part of a noncitizen's release under 8 C.F.R. § 241.13(h)(1), they are placed certain conditions of release "in order to <u>protect the public safety</u> and to promote the ability of the Service <u>to effect the alien's removal</u> as ordered, or removal to a third country, should circumstances change in the future." The order of supervision shall "include the <u>conditions that the alien obey all laws</u>" and "any other conditions that the HQPDU considers necessary to <u>ensure public safety</u> and <u>guarantee the alien's compliance with the order of removal</u>." *Id*. (emphasis added). ICE must have considered these conditions when releasing Petitioner in 2005 and must have determined that he was not a flight risk or danger to the community at that time.[7] *Id*. Yet,

[7] Under a related regulation 8 C.F.R. § 241.4(e), which also concerns the continued detention of inadmissible, criminal, and other aliens beyond the removal period, "[b]efore making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that: (1) Travel documents for the alien are not available or . . . immediate removal, while proper, is otherwise not practicable; (2) The detainee is presently a non-

Respondents do not claim that Petitioner's re-detention is justified because he now poses a flight risk or danger. (*See* Doc. 9.) For these reasons, the Court grants the habeas petition.

**IV. CONCLUSION AND ORDER**

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2. Petitioner's Motion for Temporary Restraining Order (Doc. 2) is **DENIED** as moot.

3. Respondents are **ORDERED** to release Petitioner immediately under the conditions of his most recent order of supervision.

4. Respondents are **ENJOINED** from re-detaining petitioner unless there are material changed circumstances such that removal is significant likely to occur in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing[8] that Petitioner is a flight risk or danger to the community.

5. The Clerk of the Court is directed to serve the Golden State Annex Detention Facility in McFarland, California with a copy of this order.

6. The Clerk of the Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: September 27, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE

---

violent person; (3) The detainee is likely to remain nonviolent if released; (4) The detainee is not likely to pose a threat to the community following release; (5) The detainee is not likely to violate the conditions of release; and (6) The detainee does not pose a significant flight risk if released." This suggests that when DHS releases a noncitizen subject to a final order of removal under either § 241.4 or § 241.13, DHS must first determine that the noncitizen is neither a flight risk nor danger.

[8] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, **SHALL** be provided within seven days of the arrest.